FILED
- At Albuquerque, NM

FEB 7 2025

MITCHELL R. ELFERS
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

**HONORIO ALBA, a.k.a. "Nadio,"**

    Defendant.

Cr. No. 25 -213 DHU

## PLEA AGREEMENT

Pursuant to Rule 11, Fed. R. Crim. P., the parties notify the Court of the following agreement between the United States of America, by the United States Attorney for the District of New Mexico, and the Defendant, Honorio Alba, with the advice and counsel of his attorney, Nicole Moss. This agreement is limited to the United States Attorney's Office for the District of New Mexico and does not bind any other federal, state, or local agencies or prosecuting authorities.

## REPRESENTATION BY COUNSEL

1.     The Defendant understands the Defendant's right to be represented by an attorney and is so represented. The Defendant has thoroughly reviewed all aspects of this case with the Defendant's attorney and is fully satisfied with that attorney's legal representation.

## RIGHTS OF THE DEFENDANT

2.     The Defendant further understands the Defendant's rights:

    a.     to be prosecuted by indictment;

    b.     to plead not guilty, or having already so pleaded, to persist in that plea;

1

c.      to have a trial by jury; and

d.      at a trial:

    i.      to confront and cross-examine adverse witnesses,

    ii.     to be protected from compelled self-incrimination,

    iii.    to testify and present evidence on the Defendant's own behalf, and

    iv.     to compel the attendance of witnesses for the defense.

## WAIVER OF RIGHTS AND PLEA OF GUILTY

3.      The Defendant agrees to waive these rights and to plead guilty to Count 1 of the information, charging a violation of 18 U.S.C. § 1962(d), that being RICO Conspiracy; Counts 2 through 6 of the information, charging a violation of 18 U.S.C. § 666(a)(1)(B), that being Receiving a Bribe as an Agent of an Organization Receiving Federal Funds; Count 7 of the information, charging a violation of 18 U.S.C. § 1951(a), Interference with Commerce by Extortion Under Color of Official Right; and Count 8 of the information, charging a violation of 18 U.S.C. § 1951(a), that being Conspiracy to Commit Interference with Commerce by Extortion Under Color of Official Right, in violation of 18 U.S.C. § 1951(a).

## SENTENCING

4.      As to Counts 1, 7, and 8 in the information, the Defendant understands that the maximum penalty provided by law for this offense is:

a.      imprisonment for a period of not more than 20 years;

b.      a fine not to exceed the greater of $250,000 or twice the pecuniary gain to the Defendant or pecuniary loss to the victim;

c.      a term of supervised release of not more than three years to follow any term of imprisonment. (If the Defendant serves a term of imprisonment, is then

released on supervised release, and violates the conditions of supervised

release, the Defendant's supervised release could be revoked — even on the

last day of the term — and the Defendant could then be returned to another

period of incarceration and a new term of supervised release.);

d.      a mandatory special penalty assessment of $100.00; and

e.      restitution as may be ordered by the Court.

5.      As to Counts 2 through 6 in the information, the Defendant understands that the

maximum penalty provided by law for this offense is:

a.      imprisonment for a period of not more than 10 years;

b.      a fine not to exceed the greater of $250,000 or twice the pecuniary gain to the

Defendant or pecuniary loss to the victim;

c.      a term of supervised release of not more than three years to follow any term of

imprisonment. (If the Defendant serves a term of imprisonment, is then

released on supervised release, and violates the conditions of supervised

release, the Defendant's supervised release could be revoked — even on the

last day of the term — and the Defendant could then be returned to another

period of incarceration and a new term of supervised release.);

d.      a mandatory special penalty assessment of $100.00; and

e.      restitution as may be ordered by the Court.

6.      The parties recognize that the federal sentencing guidelines are advisory and that

the Court is required to consider them in determining the sentence it imposes. The Defendant

further recognizes that while the Defendant's attorney may have made a prediction or estimate of

3

the sentence that the Court may impose, the Defendant understands that the Court is not bound by any such estimate or prediction.

## **ELEMENTS OF THE OFFENSE**

7.      If this matter proceeded to trial, the Defendant understands that the United States would be required to prove, beyond a reasonable doubt, the following elements for violations of the charges listed below:

Count 1: 18 U.S.C. § 1962(d), that being RICO Conspiracy:

| | |
|---|---|
| *First*: | A conspiracy or agreement, as detailed in the information, existed between two or more persons to participate in the affairs of an enterprise that affected interstate commerce through a pattern of racketeering activity; |
| *Second*: | that defendant deliberately joined or became a member of the conspiracy or agreement with knowledge of its purpose; and |
| *Third*: | the defendant agreed that someone, not necessarily the defendant, would commit at least two of the racketeering acts detailed in the information. |

Counts 2 through 6: 18 U.S.C. § 666(a)(2), that being Receiving a Bribe as an Agent of an Organization Receiving Federal Funds:

| | |
|---|---|
| *First*: | The defendant was an agent of a local government agency, that being the Albuquerque Police Department (APD); |
| *Second*: | The defendant solicited, demanded, accepted or agreed to accept anything of value from another person; |
| *Third*: | The defendant did so corruptly, that is, with the understanding that something of value is to be offered or given to reward or influence him in connection with his official duties; |

4

| | |
|---|---|
| *Fourth:* | The defendant acted with the intent to be influenced or rewarded in connection with some business, transaction, or series of transactions of the government agency; |
| *Fifth:* | That this business, transaction, or series of transactions involved a thing of value of $5,000 or more; and |
| *Sixth:* | The government agency, in a one-year period, received benefits of more than $10,000 under any Federal program involving a grant, contract subsidy, loan, guarantee, insurance or other assistance. |

Count 7: 18 U.S.C. § 1951(a), that being Interference with Commerce by Extortion Under Color of Official Right:

| | |
|---|---|
| *First*: | The defendant wrongfully obtained property from another with consent; |
| *Second*: | The defendant involved in the commission of the offense did so under color of official right; and |
| *Third*: | The conduct affected interstate commerce. |

Count 8: 18 U.S.C. § 1951(a), that being Conspiracy to Commit Interference with Commerce by Extortion Under Color of Official Right:

| | |
|---|---|
| *First*: | The defendant agreed with at least one other person to commit interference with commerce by extortion under color of official right; |
| *Second*: | The defendant knew the essential object of the conspiracy; |
| *Third*: | The defendant knowingly and voluntarily participated in the conspiracy; and |
| *Fourth:* | There was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged. |

## DEFENDANT'S ADMISSION OF FACTS

8.      By my signature on this plea agreement, I am acknowledging that I am pleading

guilty because I am, in fact, guilty of the offense(s) to which I am pleading guilty. I recognize

and accept responsibility for my criminal conduct. Moreover, in pleading guilty, I acknowledge

that if I chose to go to trial instead of entering this plea, the United States could prove facts

sufficient to establish my guilt of the offense(s) to which I am pleading guilty beyond a

reasonable doubt, including any facts alleged in the information that increase the statutory

minimum or maximum penalties. I specifically admit the following facts related to the charges

against me, and declare under penalty of perjury that all of these facts are true and correct:

9.      I became a sworn law enforcement officer with the Albuquerque Police

Department (APD) in June 2014. When I swore my oath as an APD officer, I swore to enforce

the laws of the state of New Mexico and to perform all duties to the best of my ability.

Additionally, as an APD officer, I was required to adhere to the Personnel Code of Conduct,

which required, among other things, to act in a manner that would not cast doubt of my integrity,

honesty, moral judgment, or character.

10.     I joined the APD driving while intoxicated (DWI) unit in 2017. As part of my

experience working as an APD officer in the DWI unit, I am aware of and am familiar with the

DWI laws and regulations in New Mexico. I understand that there are state criminal charges

associated with DWI arrests, and that there are administrative proceedings handled through the

Motor Vehicle Department (MVD) related to the revocation of the persons' driver's licenses (the

MVD proceedings).

11.     I admit that since 2018, contrary to my oath as an officer and APD's Code of

Conduct, I admit that I conspired with co-conspirator 1, a criminal defense attorney who owned a

law firm that specialized in DWI defense, RICARDO MENDEZ, who worked as an investigator

for that law firm, and other officers ("Officer Members") to engage in a scheme that targeted

persons arrested for DWI (DWI Offenders). Under this scheme, co-conspirator 1, MENDEZ, and

I would arrange for me to intentionally fail to appear at required criminal and administrative

settings associated with the DWI-related arrests, allowing co-conspirator 1 to move to dismiss

the proceedings. I further admit that I was aware that other Officer Members similarly

coordinated with co-conspirator 1 and MENDEZ to intentionally fail to appear as required at

DWI-related settings.

12.     I admit that, since at least 2018, this DWI scheme I participated in constituted an

enterprise (the DWI Enterprise) that engaged in a pattern of racketeering activity that included

multiple acts of bribery, chargeable under New Mexico state law, as well as multiple acts of

interference commerce by extortion. I further admit that the DWI Enterprise was an ongoing

organization with members who functioned as a continuing unit for the common purpose of

achieving the objectives of the enterprise. As part of this conspiracy, I admit that I agreed to

commit, and did commit, at least two acts of racketeering in the conduct of the affairs of the

DWI Enterprise.

13.     As part of the scheme, DWI Offenders, both aware and unaware of the scheme,

retained co-conspirator 1 as their attorney following their DWI arrests. Co-conspirator 1 and/or

MENDEZ consulted with the DWI Offender, and I am now aware that they strongly encouraged

that the attorney retainer fee be paid in cash. When the DWI Offender paid the cash retainer, I

was paid to not perform my duties on the particular DWI Offender's case. I was often paid in

cash but, at times, I also received other benefits and things of value, including but not limited to

jewelry and tires. MENDEZ typically handled communications with me to discuss the amount of

7

the payment and to arrange meetings to exchange payments. However, on at least one occasion, I admit that co-conspirator 1 paid me directly. I further admit that I would deliver payments to other APD Officer Members on behalf of co-conspirator 1 and MENDEZ.

14.    In terms of the payment amount the DWI Enterprise members would receive, I admit that there was generally a set amount, but there were also exceptions depending on various factors, including the circumstances of the DWI arrest, the DWI Offender's criminal history (specifically if the offender was facing felony DWI charges based on their prior DWI convictions), the amount of money the DWI Offender appeared to have, and the DWI Offender's personal relation to DWI Enterprise members.

15.    I further admit that co-conspirator 1 also provided free or significantly discounted legal services to one of my family members to develop goodwill between me and the DWI Enterprise.

16.    To execute the scheme, I admit that we (the DWI Enterprise members) developed a system to coordinate the scheduling of the MVD hearing and criminal settings to ensure that I, as an Officer Member, would be able to miss the required settings, which, in turn, allowed co-conspirator 1 to use my failure to appear as a basis to request dismissal of the proceeding even though co-conspirator 1 was aware that I had been paid to not appear. Once the DWI Offender retained co-conspirator 1, co-conspirator 1, MENDEZ, and I would coordinate my non-appearance at required settings on the state criminal case and the MVD administrative proceeding.

17.    When I failed to appear as arranged, I admit that I knew that co-conspirator 1 would move to dismiss the criminal case and the MVD proceeding. Because I was a necessary witness and because I did not appear as required, I admit that co-conspirator 1, MENDEZ, and I

8

knew that the case and proceeding would likely be dismissed. I further admit that, because the state criminal charges were dismissed, the fines, fees, and interlock requirement that would otherwise have applied to the DWI conviction were not imposed. In addition, I admit that, because the DWI Offender's driver's license was not revoked, the DWI Offender was allowed to continue to drive without restriction.

18.     I further admit that, for state criminal cases prior to 2022, co-conspirator 1, MENDEZ, and I would agree that the Officer Member would not appear at pretrial interviews (PTI), which I understand were a required part of the state criminal discovery process. I further admit that, before March 2022, as an officer and necessary witness, if I missed a PTI, or multiple PTIs, this would typically guarantee the dismissal of a DWI case. This was because, once requested by a defendant, officer PTIs became a required part of state court discovery. I admit that dismissal of the state criminal case often occurred as a sanction for the State's discovery violation, and that co-conspirator 1, MENDEZ, and I manufactured this discovery violation by having me intentionally not appear at the PTIs.

19.     I also understand that the New Mexico state rules related to PTIs on misdemeanor DWI cases were changed in 2022, and PTIs were no longer conducted on those cases. Following that, I admit that co-conspirator 1, MENDEZ, and I worked out another method to guarantee dismissal of the state criminal DWI-related offenses. I admit that because we were no longer able to manipulate my non-appearance at PTIs, co-conspirator 1, MENDEZ, and I agreed that I would not appear at the criminal DWI motion hearings or trial settings. When I failed to appear at court, co-conspirator 1 moved to dismiss the case because a necessary witness for the state would not be present. I admit that this allowed us to continue to guarantee that cases would be dismissed even though PTIs were no longer required as part of the State discovery process.

20.     As the scheme evolved over the years, I admit that I began referring cases to co-conspirator 1 and MENDEZ to secure and increase payments to myself and to the DWI enterprise and to grow the DWI Enterprise. I admit that I often retained MVD paperwork and driver's licenses, and then provided them to MENDEZ. I also frequently provided MENDEZ the DWI Offender's phone number, if obtained as part of the DWI incident. Typically, MENDEZ would then reach out to the DWI Offender I had referred and alert the DWI Offender that MENDEZ knew about the DWI arrest (even though often this was before any documentation about the arrest was publicly available). I understand that MENDEZ would arrange a time for the DWI Offender to meet with co-conspirator 1 and/or MENDEZ, typically at co-conspirator 1's law firm. I further understand that co-conspirator 1 and MENDEZ would show the DWI Offender their driver's license (which I had seized in connection to the DWI arrest and improperly provided to MENDEZ). I understand that co-conspirator 1 and/or MENDEZ would then inform the DWI Offender that, if they hired co-conspirator 1 as their attorney, they would not have to worry about the DWI arrest. I further understand that, at times, co-conspirator 1 and/or MENDEZ would guarantee that the DWI criminal case and MVD process would be dismissed. If the DWI Offender did not retain co-conspirator 1 as their lawyer, I would typically proceed with the DWI case as required, thereby usually securing a DWI conviction against the DWI Offender.

21.     I admit that I was aware that other APD Officers Members who had worked in the DWI unit and were part of the scheme would help recruit and train the next generation of Officer Members. I admit that I helped recruit officers to join the DWI Enterprise, including personally introduced them to co-conspirator 1 and/or MENDEZ, and often assured the Officer Member recruit about the success of the DWI Enterprise. I also provided MENDEZ with the personal cell

10

phone numbers for the recruits, which allowed MENDEZ to have direct access to the newly recruited Officer Members. In addition, I would tell MENDEZ which officers the DWI Enterprise should avoid attempting to recruit (meaning which officers were likely to report the DWI Enterprise's criminal activity).

22.    I further admit that MENDEZ would often discuss many of the other Officers Members who had been and were part of the DWI Enterprise from the different law enforcement agencies (APD, NMSP, and BCSO). I believe that he did so to make me feel more comfortable joining the DWI Enterprise because of the number of senior, and often high-ranking, officers who were also Officer Members. I understand and admit that this generational participation, particularly within APD, allowed the DWI Enterprise to take root amongst almost the entire APD DWI unit over a lengthy period of time. I also admit that co-conspirator 1, MENDEZ, and I asked more senior APD Officer Members to use their positions and influence within APD to try to ensure that the DWI officers were not investigated or disciplined in connection with their illegal activity, including, but not limited to, when a complaint was filed against me with the Civilian Police Oversight Agency in Fall 2023.

23.    I admit that the purpose of the DWI Enterprise was to generate and protect profits for the Enterprise members, including co-conspirator 1, the Officer Members, and MENDEZ. I also admit that the DWI Enterprise developed a system to increase referrals to the law firm (both from Officer Members but also from other DWI Offenders who received a guaranteed outcome). I admit that this allowed the DWI Enterprise to grow in size and continue its illegal conduct. I also admit that the DWI Enterprise was structured to protect co-conspirator 1's status and reputation as an attorney. This allowed co-conspirator 1 to continue to appear in State court and at the MVD hearings on behalf of the various DWI Offenders, and to continue to grow the DWI

Enterprise. I also admit that the DWI Enterprise's purpose was to conceal the illegal activity involved with the DWI Offender's cases so that the Enterprise members could earn more profits and avoid prosecution.

24.     At all times relevant to Counts 2 through 6, of the Information, I admit that as a sworn law enforcement officer employed by APD, I was an agent of APD. I further admit that APD was an agency of the City of Albuquerque, a local government located within the District of New Mexico.

25.     I am now aware that APD received more than $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, and insurance during each of the following one-year periods of time:

a.      February 1, 2019 – January 31, 2020

b.      February 1, 2020 – January 31, 2021

c.      February 1, 2021 – January 31, 2022

d.      February 1, 2022 – January 31, 2023

e.      February 1, 2023 – January 31, 2024.

26.     During each of the above-listed one-year periods, I solicited, demanded, accepted, and agreed to accept things of value from co-conspirator 1 and MENDEZ.

27.     The items of value included United States currency and also tangible property. I also was provided with free or significantly discounted legal services for my family members. I also accepted gift cards and other gifts, including tires and a diamond ring, from co-conspirator 1 and MENDEZ.

28. I admit that I accepted the items of value intending to be influenced and rewarded in connection with my official duties and in connection with a transaction and a series of transactions involving $5,000 or more during each of the above-listed one-year periods.

29. I further admit that, in soliciting, demanding, accepting, and agreeing to accept items of value in my role as an APD sworn law enforcement officer, I intended to be influenced and rewarded in exchange for taking, or for failing to take, actions that would lead to clients of co-conspirator 1's law firm evading criminal and/or administrative consequences related to the clients' DWI arrests.

30. I admit that I understood that in exchange for payments in U.S. currency and other items of value, I was expected to take actions including, but not limited to, failing to appear for MVD hearings, failing to file criminal charges, failing to appear for pretrial interviews, and failing to appear for court settings. I knew that these actions were expected to lead to the dismissal of administrative and criminal proceedings despite also knowing that I had a duty to cooperate fully in all aspects of the judicial process and to appear at court hearings, pretrial interviews, or MVD hearings.

31. I admit that I also worked in concert with co-conspirator 1, MENDEZ, and co-conspirator 2, an Albuquerque criminal defense attorney, and accepted and agreed to accept property I was not due in my role as a sworn law enforcement officer related to a DWI arrest. In April 2023, I arrested Z.W. and charged them by criminal complaint with DWI. Z.W. retained co-conspirator 2 to represent them and, with consent, paid for the representation. After Z.W. retained co-conspirator 2, I accepted and agreed to accept United States currency in coordination with co-conspirator 1, MENDEZ, and co-conspirator 2 in exchange for my agreement to act, or

to fail to act, in such a way that Z.W. would avoid criminal and administrative consequences related to their DWI arrest.

32.     Apart from the above-described Enterprise, I admit that I also participated in a conspiracy with co-conspirator 1, MENDEZ, and others to secure, or to attempt to secure, payment from DWI Offenders in exchange for no criminal charges being filed against them related to their DWI arrests. I further admit that as part of the scheme, I arrested DWI Offenders but released them without booking them into jail or filing charges. I provided the DWI Offenders' contact information to MENDEZ, and he would contact the DWI Offenders and attempt to get them to pay an upfront fee in United States currency in exchange for the conspiring APD officers never filing criminal charges.

33.     In several instances, I admit that MENDEZ, the conspiring APD officers, and I did not inform co-conspirator 1 about the arrests or the attempts to secure payments in exchange for charges not being filed.

34.     I admit to accepting payment not to file charges in relation to the following arrest without informing co-conspirator 1 of the DWI arrest, though these were not the only DWI Offenders who made payments under the scheme to secure payments in exchange for charges not being filed or who were solicited to make payments as part of that scheme:

      a.  In April 2022, I arrested S.H. for DWI but did not charge S.H. or book S.H. into jail. Within days of S.H.'s arrest, MENDEZ spoke with S.H. and advised that no charges would be filed related to S.H.'s DWI arrest if S.H. paid United States currency. S.H. agreed and paid United States currency. I admit that I was paid a portion of the United States currency paid by S.H.. In exchange for being paid the

United States currency, I agreed not to file, and did not file, criminal charges against S.H. related to S.H.'s DWI arrest.

35.    I further admit that in this conspiracy and within the broader Enterprise, I acted in concert with other co-conspirators and intended to do so in order for the scheme and the Enterprise to succeed and profit. The Officer Members, including me, and conspiring APD officers and MENDEZ relied on the attorney co-conspirators to handle any aspect of the scheme or the Enterprise that required an attorney presence in court or administrative settings. Without the Officer Members or the conspiring APD officers' agreement and participation, the high success rate of the Enterprise in avoiding criminal and administrative consequences for DWI Offenders would not have been possible. I played an integral role in the Enterprise and the criminal scheme by referring new DWI Offenders to co-conspirator 1 and MENDEZ and by accepting payment and items of value in exchange for acting, or failing to act, to ensure DWI Offenders who were represented by the attorney co-conspirators did not face administrative or criminal consequences related to their DWI arrests. All members of the Enterprise and of the criminal scheme shared in the mutual benefits of the success of the schemes.

36.    I further admit that this Enterprise and the above-described criminal scheme affected interstate commerce. I admit that non-prosecuted DWI cases affect interstate commerce. I understand that portions of the fines and fees paid to state courts in New Mexico are sent to the State Treasurer, who directs the money to the correct State of New Mexico fund. The State of New Mexico uses its various funds to participate in interstate commerce and to purchase items from companies who engage in interstate commerce. Because the DWI Enterprise allowed DWI Offenders to avoid convictions and the resulting fines and fees, the amount of money available to be transferred to the State of New Mexico funds was decreased and the funds did not collect all

the fines and fees to which the State was entitled. Additionally, as a result of the efforts of the

DWI Enterprise, DWI Offenders avoided administrative and criminal requirements to have

interlock devices installed on their vehicles. Interlock devices are manufactured by and

purchased from companies involved in interstate commerce. Finally, I admit that, when drivers

avoid criminal culpability for DWI, they become more likely to drive while intoxicated in the

future, and, the more often that a person drives while intoxicated, the more likely they are to

have an accident. I admit that DWI-related accidents account for economic losses that impact

interstate commerce and the use of interstate highways.

37.     I further admit that this conduct occurred in the District of New Mexico.

38.     By signing this agreement, the Defendant admits that there is a factual basis for

each element of the crime(s) to which the Defendant is pleading guilty and agrees to affirm the

facts set forth above during the plea colloquy. The Defendant agrees that the Court may rely on

any of these facts, as well as facts in the presentence report, to determine the Defendant's

sentence, including, but not limited to, the advisory guideline offense level.

## RECOMMENDATIONS

39.     Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend as

follows:

>       a.     As of the date of this agreement, the Defendant has clearly demonstrated a
>
>              recognition and affirmative acceptance of personal responsibility for the
>
>              Defendant's criminal conduct. Consequently, pursuant to U.S.S.G. §
>
>              3E1.1(a), so long as the Defendant continues to accept responsibility for the
>
>              Defendant's criminal conduct, the Defendant is entitled to a reduction of two
>
>              levels from the base offense level as calculated under the sentencing

16

guidelines, and if applicable, a reduction of an additional offense level pursuant to U.S.S.G. § 3E1.1(b). Further, the United States is free to withdraw this recommendation if the Defendant engages in any conduct that is inconsistent with acceptance of responsibility between the date of this agreement and the sentencing hearing. Such conduct would include committing additional crimes, failing to appear in Court as required, and/or failing to obey any conditions of release that the Court may set.

b.    The Defendant understands that the above recommendations are not binding on the Court and that whether the Court accepts these recommendations is a matter solely within the discretion of the Court after it has reviewed the presentence report. Further, the Defendant understands that the Court may choose to vary from the advisory guideline sentence. If the Court does not accept any one or more of the above recommendations and reaches an advisory guideline sentence different than expected by the Defendant, or if the Court varies from the advisory guideline range, the Defendant will not seek to withdraw the Defendant's plea of guilty. In other words, regardless of any of the parties' recommendations, the Defendant's final sentence is solely within the discretion of the Court.

40.    Apart from the recommendations set forth in this plea agreement, the United States and the Defendant reserve their rights to assert any position or argument with respect to the sentence to be imposed, including but not limited to the applicability of particular sentencing guidelines, adjustments under the guidelines, departures or variances from the guidelines, and the application of factors in 18 U.S.C. § 3553(a).

17

41.     Regardless of any other provision in this agreement, the United States reserves the right to provide to the United States Pretrial Services and Probation Office and to the Court any information the United States believes may be helpful to the Court, including but not limited to information about the recommendations contained in this agreement and any relevant conduct under U.S.S.G. § 1B1.3.

## DEFENDANT'S ADDITIONAL AGREEMENT

42.     The Defendant understands the Defendant's obligation to provide the United States Pretrial Services and Probation Office with truthful, accurate, and complete information. The Defendant represents that the Defendant has complied with and will continue to comply with this obligation.

43.     The Defendant agrees that any financial records and information provided by the Defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

44.     The Defendant agrees that, upon the Defendant's signing of this plea agreement, the facts that the Defendant has admitted under this plea agreement as set forth above, as well as any facts to which the Defendant admits in open court at the Defendant's plea hearing, shall be admissible against the Defendant under Federal Rule of Evidence 801(d)(2)(A) in any subsequent proceeding, including a criminal trial, and the Defendant expressly waives the Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to the facts the Defendant admits in conjunction with this plea agreement.

45.     By signing this plea agreement, the Defendant waives the right to withdraw the Defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d) unless (1) the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5) or (2)

the Defendant can show a fair and just reason as those terms are used in Rule 11(d)(2)(B) for requesting the withdrawal. Furthermore, the Defendant understands that if the court rejects the plea agreement, whether or not the Defendant withdraws the guilty plea, the United States is relieved of any obligation it had under the agreement and the Defendant shall be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted.

46.    The Defendant will not willfully fail to appear for any court appearance in this matter, nor willfully fail to surrender as ordered for service of any sentence.

47.    The Defendant agrees not to engage in conduct that would constitute a new crime. Offenses that would be excluded for sentencing purposes under U.S.S.G. § 4A1.2(c) are not within the scope of this paragraph's agreement.

48.    Defendant agrees not to engage in conduct that would constitute obstructing or impeding the administration of justice under U.S.S.G. § 3C1.1.

## RESTITUTION

49.    The parties agree that, as part of the Defendant's sentence, the Court will enter an order of restitution pursuant to the Mandatory Victim's Restitution Act, 18 U.S.C. § 3663A, if applicable; if § 3663A is not applicable, the Court will enter an order of restitution pursuant to 18 U.S.C. §§ 3663 and 3664.

50.    No later than July 1 of each year after sentencing, until restitution is paid in full, the Defendant shall provide the Asset Recovery Unit, United States Attorney's Office, 201 Third Street NW, Suite 900, Albuquerque, New Mexico 87102, (1) a completed and signed financial statement provided to the Defendant by the United States Attorney's Office and/or the United States Probation Office and (2) a copy of the Defendant's most recent tax returns.

19

## WAIVER OF APPEAL AND POST-CONVICTION RIGHTS

51.     The Defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford the right to appeal a conviction and the sentence imposed. Acknowledging that, the Defendant knowingly waives the right to appeal the Defendant's conviction(s) and sentence, as well as any order of restitution entered by the Court. This waiver extends to any challenge to the manner in which the sentence was determined or imposed, including the district court's authority to make findings supporting the sentence.

52.     The Defendant also waives the right to appeal any sentence imposed below or within the guideline range upon a revocation of supervised release in this cause number but may nonetheless appeal the determination of the revocation guideline range.

53.     The Defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c) where such denial rests upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a).

54.     In addition, the Defendant agrees to waive any collateral attack to the Defendant's conviction(s) and any sentence, pursuant to 28 U.S.C. §§ 2241, 2255, or any other extraordinary writ, except on the issue of defense counsel's ineffective assistance.

## GOVERNMENT'S ADDITIONAL AGREEMENT

55.     Provided that the Defendant fulfills the Defendant's obligations as set out above, the United States agrees that the United States will not bring additional criminal charges against the Defendant arising out of the facts forming the basis of the present information.

## VOLUNTARY PLEA

56.     The Defendant agrees and represents that this plea of guilty is freely and voluntarily made and is not the result of force, threats, or promises (other than the promises set

20

forth in this agreement and any addenda). There have been no promises from anyone as to what sentence the Court will impose. The Defendant also represents that the Defendant is pleading guilty because the Defendant is in fact guilty.

## VIOLATION OF PLEA AGREEMENT

57.     The Defendant agrees that if the Court finds by a preponderance of the evidence that the Defendant has violated any provision of this agreement, the United States will be released from its obligations under the agreement.

58.     The Defendant further agrees that in the event the Court finds that Defendant has breached this plea agreement, thus releasing the United States of its obligations under the agreement, such events do not constitute a fair and just reason under Rule 11(d)(2)(B) for withdrawing the guilty plea(s) entered pursuant to this agreement.

59.     Following the Court's finding of a breach of this agreement by the Defendant, should the United States choose to pursue any charge that was either dismissed or not filed as a result of this agreement, the Defendant waives any defense to that charge or charges based on the lapse of time between the entry of this agreement and the Court's finding of a breach by the Defendant.

## SPECIAL ASSESSMENT

60.     At the time of sentencing, the Defendant will tender to the United States District Court, District of New Mexico, 333 Lomas Blvd. NW, Suite 270, Albuquerque, New Mexico 87102, a money order or certified check payable to the order of the **United States District Court** in the amount of $800 in payment of the special penalty assessment described above.

## ENTIRETY OF AGREEMENT

61.     This document and any addenda are a complete statement of the agreement in this

case and may not be altered unless done so in writing and signed by all parties. This agreement is

effective upon signature by the Defendant and an Assistant United States Attorney.

AGREED TO AND SIGNED this 7ᵗʰ day of February, 2025.

ALEXANDER M.M. UBALLEZ
United States Attorney


SHANA B. LONG
KATHERINE L. LEWIS
Assistant United States Attorney
201 Third Street, Suite 900
Albuquerque, New Mexico   87103
(505) 346-7274


I have carefully discussed every part of this agreement with my client. Further, I have
fully advised my client of my client's rights, of possible defenses, of the sentencing factors set
forth in 18 U.S.C. § 3553(a), of the relevant sentencing guidelines provisions, and of the
consequences of entering into this agreement. In addition, I have explained to my client the
elements to each offense to which she/he is pleading guilty. To my knowledge, my client's
decision to enter into this agreement is an informed and voluntary one.


Nicole Moss
Attorney for the Defendant


I have carefully discussed every part of this agreement with my attorney.   I understand
the terms of this agreement, and I voluntarily agree to those terms.   My attorney has advised me
of my rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of
the relevant sentencing guidelines provisions, and of the consequences of entering into this
agreement.


Honorio Alba
Defendant